1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    United States of America,              )    CR-07-757-PHX-DGC
                                             )
10            Plaintiff,                      )    **ORDER**
                                             )
11   vs.                                     )
                                             )
12   Howard W. Pease,                        )
                                             )
13            Defendant.                      )
     _____)

14

15          Defendant has filed a motion to dismiss the Indictment as duplicitous and on statute

16   of limitations grounds. Dkt. #31. A response and reply have been filed. Dkt. ##35, 42. The

17   Court heard oral arguments on March 18, 2008. The Court granted Defendant's motion in

18   part, concluding that some of the offenses charged in the Indictment are time-barred.

19   Following this ruling, the Government made an oral motion to dismiss the remainder of the

20   Indictment without prejudice pursuant to Rule 48(a) of the Federal Rules of Criminal

21   Procedure. The Court granted the Government's motion. This order will set forth the

22   reasons for the Court's rulings.

23   **I.      Continuing Offenses and the Statute of Limitations.**

24          The single-count Indictment alleges that "[o]n or about January, 1999 and continuing

25   to March, 2007, . . . Defendant, Harold W. Pease, did steal, purloin, and knowingly convert

26   to his own use and the use of another, money in excess of $178,000.00 of the United States

27   or any department or agency thereof, to wit: The Social Security Administration." Dkt. #1.

28   The Indictment alleges that this conversion violated 18 U.S.C. § 641. *Id.*

1    Relying on the five-year statute of limitations found in 18 U.S.C. § 3282, Defendant

2    argues that the Government cannot prosecute him for conversion of Social Security funds

3    occurring before June 26, 2002 – five years before the date of the Indictment.  Dkt. #31.  This

4    argument requires the Court to decide whether the conversion offense described in the first

5    paragraph of 18 U.S.C. § 641 constitutes a "continuing offense."

6    The parties agree that this issue is governed by *Toussie v. United States*, 397 U.S. 112

7    (1970).  The Supreme Court in *Toussie* recognized the continuing offense doctrine – that the

8    Government may prosecute a defendant for a continuing offense even if only a portion of the

9    offense was committed within the statute of limitations.  The Court cautioned, however, that

10   the doctrine "should be applied in only limited circumstances."  *Id*. at 115.  Later, the Court

11   stated "that continuing offenses are not to be too readily found[.]"  *Id.* at 116.

12   *Toussie* held that a particular crime constitutes a continuing offense only if one of two

13   circumstances exist:  (1) "[t]he explicit language of the substantive criminal statute compels

14   such a conclusion," or (2) "the nature of the crime involved is such that Congress must

15   assuredly have intended that it be treated as a continuing one."  *Id*. at 115.  Both parts of this

16   test focus on the intent of Congress, not on the continuing nature of the Defendant's conduct.

17   Thus, as the Ninth Circuit has explained, "the analysis turns on the nature of the substantive

18   offense, not on the specific characteristics of the conduct in the case at issue."  *United States*

19   *v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991), *overruled on other grounds by United States v.*

20   *Scarano*, 76 F.3d 1471, 1477 (9th Cir. 1996); *see United States v. W.R. Grace*, 429 F. Supp

21   2d 1207, 1243 (D. Mont. 2006) ("The goal of the *Toussie* test is to ascertain what Congress

22   'must have assuredly intended' with respect to the application of the statute of limitations;

23   there is nothing about the specific conduct charged in a given case that could possibly shed

24   light on Congress' intent.").  As one court has noted, the phrase "continuing offense" for

25   statute of limitations purposes "is a term of art[.]"   *United States v. Rivlin*, No. 07 Cr. 524

26   (SHS), 2007 WL 4276712, at *2  (S.D.N.Y. Dec. 5, 2007).  It "does not merely mean an

27   offense that continues in a factual sense, as where a defendant engaged in a course of conduct

28   comprised of repeated criminal violations," but instead means a substantive criminal offense

that Congress established as continuing.  *Id*.  "In other words, there can be a distinction between conduct that is deemed a 'continuing offense' under *Toussie* and conduct that constitutes a continuing course of criminal activity, but which is not deemed 'continuing' for limitations purposes."  *Id*.

The offense at issue in this case is conversion of government funds.  The language of the Indictment makes clear – and counsel for the Government expressly confirmed at oral argument – that the Indictment alleges an offense under the first paragraph of § 641, which imposes criminal liability on any person who "embezzles, steals, purloins, or knowingly converts" government funds to his use.  18 U.S.C. § 641.[1]

Under the first part of the *Toussie* test, the Court must look at the language of § 641 to determine whether Congress intended the conversion crime codified in the first paragraph to be a continuing offense.  Congress has made clear in other statutes that particular crimes are to be viewed as continuing.  In 18 U.S.C. § 3284, for example, Congress stated that the concealment of assets of a debtor "shall be deemed a continuing offense" until the debtor is discharged or discharge is denied.  Similarly, in 22 U.S.C. § 618(e), Congress provided that failure to file foreign registration statements "shall be considered a continuing offense for as long as such failure exists."  Section 641 contains no such language.  The Court can find nothing in the language of the first paragraph to suggest that Congress intended to create a continuing offense.

Under the second part of the *Toussie* test, the Court must look to the nature of the offense codified in § 641 – conversion – and determine whether it is of such a nature that Congress must assuredly have intended that it be treated as a continuing offense.  In making this determination, "[i]t is not the active or passive nature of a defendant's actions that matters, but rather whether the statute describes an offense that by its nature continues after

---

[1] The second paragraph of § 641 imposes criminal liability on "[w]hoever receives, conceals, or retains [government money or property] with the intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted[.]" 18 U.S.C. § 641.  Because the Government has not charged Defendant under this paragraph, the Court need not consider whether it creates a continuing offense for limitations purposes.

1   the elements have been met." *Rivlin*, 2007 WL 4276712 at \*3 (quotations and citations

2   omitted).  Classic examples of continuing offenses include conspiracy, escape, kidnapping,

3   bigamy, and crimes of possession.  *See id*. at \*2 (citing cases); *W.R. Grace*, 429 F. Supp. 2d

4   at 1240 n.32 (same).  These crimes, once committed, continue in effect until affirmatively

5   ended.  For example, when a defendant escapes from custody, the defendant remains in an

6   escaped status continuously until re-arrested.  Similarly, a defendant who takes possession

7   of contraband continues to possess the contraband day after day until the possession ceases.

8   By their very nature, these offenses continue.

9         The same cannot be said of conversion.  As another district court has recognized in

10  considering the first paragraph of § 641, "[c]onversion is simply the wrongful assumption

11  and exercise of control over another's property."  *United States v. Beard*, 713 F. Supp. 285,

12  291 (S.D. Ind. 1989) (citing *Black's Law Dictionary*, 402 (4th ed. 1968)).  "What the

13  converter intends to do (or in fact does) with the converted property is irrelevant:  the act of

14  'conversion' is completed upon the initial interference with the owner's interest."  *Id*.  Given

15  this nature of conversion, the Court cannot conclude that Congress "assuredly must have

16  intended" that the offense in the first paragraph of § 641 "be treated as a continuing one."

17  *Toussie*, 397 U.S. at 155; *see Beard*, 713 F. Supp. at 291 ("the court finds that there is

18  nothing in the nature of the crime of conversion which would indicate that Congress must

19  have silently intended that is be treated as a continuing offense").

20        In arguing that this case presents a continuing offense for limitations purposes, the

21  Government asserts that Defendant engaged in a continuing course of converting Social

22  Security funds – that he failed for years to inform the Social Security Administration that he

23  was receiving income from self-employment, all the while continuing to receive disability

24  insurance payments and convert them to his own use.  As explained above, however, it is not

25  the continuing nature of the defendant's conduct, but the inherently continuing nature of the

26  offense at issue, that gives rise to a continuing offense under *Toussie*.  For the reasons

27  explained above, the Court concludes that the crime of conversion of government funds as

28  codified in the first paragraph of § 641 is not a "continuing offense."  The statute of

1    limitations therefore bars prosecution of Defendant for all violations of this provision that

2    occurred before June 26, 2002.[2]

3    **II.    The Government's Motion to Dismiss.**

4           Following the Court's ruling on the statute of limitations, the Government moved to

5    dismiss the Indictment under Rule 48(a).  That rule provides that "[t]he government may,

6    *with leave of court*, dismiss an indictment, information, or complaint."  Fed. R. Crim. P.

7    48(a) (emphasis added).  The rule constitutes a limited check on the Executive Branch's

8    otherwise substantial discretion in deciding when, where, and how to prosecute defendants.

9    "The Executive remains the absolute judge of whether a prosecution should be initiated and

10   the first and presumptively the best judge of whether a pending prosecution should be

11   terminated.   The exercise of its discretion with respect to the termination of pending

12   prosecutions should not be judicially disturbed unless truly contrary to manifest public

13   interest."  *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975).  As the Ninth Circuit

14   has explained, "[w]hen the government moves to dismiss counts in an indictment, the district

15   court has limited discretion to deny the motion.  The limitation on its discretion is based on

16   separation of powers."  *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir.

17   2000).

18          A court may deny the Government's motion only if dismissal would be "clearly

19   contrary to the public interest" or if "the dismissal would contribute to prosecutorial

20   harassment by subjecting a defendant to 'charging, dismissing, and recharging.'"  *United*

21   *States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988) (quoting *Rinaldi v. United States*, 434

22   U.S. 22, 29 n.15 (1977)).  "A fundamental consideration in assessing the propriety of a

23   prosecutor's dismissal motion is whether the motion is made in 'good faith.'"  *Id*.  In seeking

24   dismissal under Rule 48(a), the Government is entitled to a "presumption of good faith."

25

26          [2] The Government cited a number of cases that have considered the second paragraph

27   of § 641 and others that have considered 42 U.S.C. § 408(d).  Dkt. #35 at 7-10.  Because

28   *Toussie* establishes an offense-specific inquiry into the intent of Congress, and the offense
     at issue in this case is limited to the first paragraph of § 641, these cases are inapposite.

1   *United States v. Welborn*, 849 F.2d 980, 984 (5th Cir. 1988); *see Garcia-Valenzuela*, 232

2   F.3d at 1007 (stating that "the presumption of regularity supports . . . prosecutorial

3   decisions") (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

4           Counsel for the Government in this case explained that the Court's statute of

5   limitations ruling was a new development in this District, and one that might well affect the

6   manner in which Social Security fraud cases are prosecuted.   Counsel noted that the

7   Government has several charging options in such cases, including 42 U.S.C. § 408(a), and

8   that the Government desired to consider these options in light of the Court's ruling.

9   Although the Court explained to the parties how this case might proceed through carefully

10  crafted jury instructions to avoid problems of duplicity, and defense counsel favored

11  proceeding in that manner, the Court is not free to deny the Government's motion for

12  dismissal merely because its or defense counsel's conception of the public interest differs

13  from that of the prosecuting attorney.   "The question is not what the judge would do if he

14  were the prosecuting attorney, but whether he can say that the action of the prosecuting

15  attorney is such a departure from sound prosecutorial principle as to mark it an abuse of

16  prosecutorial discretion."  *United States v. Ammidown*, 497 F.2d 615, 623 (D.C. Cir. 1974).

17          The Court finds no evidence of bad faith or harassment in the Government's motion,

18  and cannot conclude that dismissal without prejudice would be clearly contrary to the public

19  interest.  The Court accordingly granted the Government's motion and dismiss the remainder

20  of the case without prejudice.

21          **IT IS ORDERED:**

22          1.      Defendant's Motion to Dismiss Indictment for Duplicity (Dkt. 31) is **granted**

23  with respect to all violations of the first paragraph of 18 U.S.C. § 641 that occurred before

24  June 26, 2002.  Defendant's motion is **denied** in all other respects.

25          2.      The Government's oral motion to dismiss the remainder of the case pursuant

26  to Rule 48(a) of the Federal Rules of Criminal Procedure is **granted**.

27

28

1    3.    The Clerk shall terminate this action.

2    DATED this 21st day of March, 2008.

3

4

5    _____

6    David G. Campbell
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28